**Louis H. OSS and Michelle S. Oss, Plaintiffs-Appellants,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant-Appellee.**

**No. 86–1274**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1987.
Rehearing Denied Feb. 3, 1987.

---

Charles E. Anderson, El Paso, Tex., for plaintiffs-appellants.

Joel Fry, Jim Curtis, El Paso, Tex., for defendant-appellee.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

An insured who had been tendered the medical expenses covered by the medical payments clause of his automobile insurance policy seeks to justify his refusal to subrogate the insurer to his rights against a third party tortfeasor on the ground that, while he had recovered all of the tortfeasor's assets available for compensation, he had still realized far less than the amount of damages suffered. Under Texas law, applicable to this diversity case, this is a sufficient basis on which to withstand summary judgment in favor of the insurer, and we therefore reverse the district court's holding.

Louis H. Oss bought an automobile insurance contract from United Services Automobile Association. The policy provided a maximum of $15,000 for medical payments coverage. The daughter of the insured, Michelle S. Oss, was involved in an automobile collision that seriously injured her, rendering her a paraplegic. To date, she has expended $70,000 in medical services, and she will require much more attention in the future. Her total damages would, according to the Osses, amount to hundreds of thousands of dollars. The third party tortfeasor, however, had insurance only in the amount of $100,000, and allegedly has no other assets. Michelle therefore settled her claim against the tortfeasor's insurer for $100,000. She, her father, and her mother have released all claims against the tortfeasor and the tortfeasor's insurer.

Before settling with the third-party's insurer, Michelle had made a claim for medical payment benefits under the United Services policy. In response, United Services had tendered its full policy limit of $15,000 to her, reserving its right of subrogation. Michelle had refused to acknowledge the insurer's right to subrogation, and her father, as the original named insured in the automobile policy, joining with Michelle as an additional insured, had filed this suit for medical payment benefits under the policy. In response, United Services again offered to pay $15,000 under the medical payments coverage if the insured would acknowledge its subrogation rights.

Oss and his daughter contend that, notwithstanding the subrogation, their insurer is not entitled to complete reimbursement because the third-party tortfeasor's settlement only partially compensates him and his daughter for their loss and no additional recovery could be had from the tortfeasor. The argument has merit.

The right of subrogation is ordinarily exercised in one of two ways. If the insurer pays benefits that partially compensate the insured and the tortfeasor subsequently pays the insured an amount that makes the total received by the insured greater

than its actual loss, the insurer may recover the benefits paid by claiming the surplus amount. In this way, subrogation prevents a double recovery—unjust enrichment—by the insured.[1] Alternatively, after an insurer has fully compensated the insured, it may sue the tortfeasor directly to recover its outlay. The tortfeasor, then, does not become the unintended beneficiary of the insurance contract.[2] The insurer's right to sue the tortfeasor is a right derived from the insured and may be compromised by the insured. If, before the insurer pays any benefits, the insured releases the tortfeasor from further liability, the insurer cannot bring an action against the tortfeasor. In order to protect insurers, therefore, Texas courts have held that insurers are discharged from their obligation to pay the insured to the full extent to which the insured has defeated the right of subrogation.[3]

While the right of subrogation arose as an equitable doctrine, the United Services automobile policy includes an express subrogation clause. Under the terms of the policy, United Services is subrogated to the insured's right of recovery against third parties. The insured may do nothing after suffering a loss that will prejudice the ability of United Services to exercise the subrogated right of recovery. The contract further provides that, in the event the insured recovers damages from third parties, the insured is under a duty to hold such proceeds in trust for United Services and to reimburse United Services to the extent of the payment made to the insured.

Texas courts have repeatedly declared such contractual subrogation rights to be valid and enforceable.[4] Indeed, this court has noted that Texas courts are "peculiarly hospitable" to upholding rights of subrogation.[5] The subrogation right arising out of the payment of medical-payment benefits to the insured has specifically been held valid and enforceable in Texas.[6]

The district court found that the Osses had by their settlement defeated United Services' subrogation rights against the tortfeasor. Consequently, the court granted United Services a summary judgment discharging the company from its duty to compensate the Osses.

It is not clear, however, that the Osses actually compromised the subrogation rights of United Services. They assert that the tortfeasor is judgment-proof beyond the settlement payment made by the tortfeasor's insurer. United Services, therefore, could not have looked to the tortfeasor to recover any benefits it might have paid to the Osses. If the Osses did not in fact defeat United Services' right of subrogation, there is no basis for discharging United Services from its obligations under the policy.

The Osses' brief also suggests that United Services cannot justify its refusal to pay benefits on the basis that payment would result in unjust enrichment of the Osses. The Osses predict that their medical costs will far exceed the $100,000 received from the tortfeasor plus the $15,000 demanded from United Services. In *Ortiz v. Great Southern Fire & Casualty Ins. Co.*,[7] the

1. *State Farm Mutual Automobile Ins. Co. v. Elkins,* 451 S.W.2d 528, 531 (Tex.Civ.App.1970, no writ).

2. Kimball & Davis, "The Extension of Insurance Subrogation," 60 Mich.L.Rev. 841, 841 (1962).

3. *Gulf Insurance Co. v. Texas Casualty Insurance Co.,* 580 S.W.2d 645, 648 (Tex.Civ.App.1979, writ ref'd n.r.e.); *Millers Mutual Fire Insurance Co. v. Mitchell,* 392 S.W.2d 703, 706–07 (Tex.Civ.App. 1965, no writ); *Maryland Motor Car Ins. Co. v. Haggard,* 168 S.W. 1011, 1013 (Tex.Civ.App.1914, no writ).

4. *Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627, 637 (Tex.Civ.App.1983, writ ref'd n.r.e.); *Group Hospital Service, Inc. v. State Farm Ins. Co.,* 517 S.W.2d 897, 899 (Tex.Civ.App. 1974, no writ).

5. *Yonack v. Interstate Securities Co. of Texas,* 217 F.2d 649, 651 (5th Cir.1954), *reh'g denied,* (1955).

6. *Foundation Reserve Ins. Co. v. Cody,* 458 S.W.2d 214, 216 (Tex.Civ.App.1970, no writ).

7. 597 S.W.2d 342 (Tex.1980).

Texas Supreme Court reiterated the well-settled rule that, when the insured's losses, including the costs and expenses of collection, exceed the amounts paid by the tortfeasor and the insurer, there is no double recovery and the insurer is not entitled to a share of the insured's compensation.[8]

United Services urges us to distinguish *Ortiz* on the basis that it was a case involving equitable subrogation while here subrogation is based upon contract. United Services construes its subrogation clause to reverse the priority of rights between the insured and insurer to any recovery from a third party.[9] According to United Services, it was entitled to the first right of recovery from the tortfeasor whatever the total damage. Consequently, because the $100,000 paid by the tortfeasor exceeds the maximum policy benefit of $15,000, the duty of United Services to pay benefits was fully offset by the third-party recovery. In Texas, however, the same principles govern both equitable and contractual subrogation.[10] By construing subrogation clauses to confirm, but not expand, the equitable subrogation rights of insurers, Texas properly recognizes the expectations of insureds.[11] As a leading commentator has written, "the subrogation clause would not be regarded, even by a careful and intelligent reader, as qualifying the basic promise to pay, and to give it that effect is to enforce provisions drafted by the insurer that are inherently deceptive."[12] This is good reason for holding that the "[subrogation] clause must be subordinated to the basic insurance promise" and that the insurer should not "recover sums received by the insured from the tort source until the insured has been fully indemnified."[13]

In sum, if the tortfeasor is judgment proof beyond the settlement paid to the Osses, the settlement did not compromise the subrogation rights of United Services and the Osses should not lose their right to benefits under the policy. Moreover, if the Osses correctly assert that their medical costs would exceed the sum of the amounts received from the tortfeasor and demanded from United Services, there is no need to invoke subrogation to prevent unjust enrichment. On the other hand, denial of insurance benefits to the Osses would exacerbate the already inadequate degree of undercompensation, thereby thwarting the very purpose of their taking out the insurance policy.

The district court made no findings regarding the expected amount of medical costs or the ability of the tortfeasor to pay beyond the $100,000 settlement. These factual issues must be resolved in order to reach a decision in this case. We therefore REVERSE the summary judgment and REMAND for further proceedings in accordance with this opinion.

**8.** *Id.* at 343; *Propeck v. Farmers' Mutual Ins. Ass'n,* 65 S.W.2d 390, 390 (Tex.Civ.App.1933, no writ).

**9.** The policy provides in part:
  If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
  (1) Hold in trust for us the proceeds of the recovery; and
  (2) Reimburse us to the extent of our payments.

**10.** *Means v. United Fidelity Life Ins. Co.,* 550 S.W.2d 302, 309 (Tex.Civ.App.1977, writ ref'd n.r.e.).

**11.** G. Palmer, Law of Restitution § 23.14, at 434 & n. 13 (1978).

**12.** *Id.*

**13.** *Id.* at 432–33.