IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00080-CV

 

Fortis Benefits,

                                                                      Appellant

 v.

 

Vanessa Cantu

AND
SUNDANCE RESOURCES, INC.

                                                                      Appellees

 

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. 249-87-98

 



O p i n i o n



 








            On April 12, 1998, Vanessa Cantu, then a minor, was severely injured and rendered a paraplegic in a
motor vehicle accident.  Suit was filed against, among others, the vehicle’s
manufacturer (Ford Motor Company), the vehicle’s driver (Michael Patman), and
Patman’s employer (Sundance Resources, Inc.).  Vanessa sought to recover, among
other damages, actual damages for past and future medical expenses.  In March
2000, Fortis Benefits, which provided health insurance benefits to Vanessa
through a health insurance policy issued to her father, intervened to recover
through subrogation or reimbursement the benefits that it had paid for
Vanessa’s health care as a result of the accident.  After numerous delays
(during which Vanessa reached majority), the case was set for trial for July 21, 2003.

          At final pretrial on July 15, 2003, Fortis agreed on the record with all other parties that Fortis would be
excused from attending the pretrial and trial until the post-verdict phase and
that Fortis would look only to the plaintiff to resolve its subrogation or
reimbursement claim.  Before trial began, Vanessa settled her claims with the
defendants for $1,445,000 and agreed with Sundance that she would be wholly
responsible for Fortis’s intervention claims and would secure a dismissal with
prejudice of Fortis’s subrogation claim against Sundance.  Fortis was not
involved in the settlement.

          After being unable to
reach an agreement with Fortis, Vanessa filed a motion for summary judgment,
asserting that, because she had not been “made whole” in the settlement, Fortis
was not entitled to recover anything on its subrogation or reimbursement claim,
which at that time totaled $247,534.14.  Vanessa’s summary judgment evidence
included her attorney’s affidavit, which stated that her past medical expenses
totaled at least $378,500 and which attached two “life care plans” that
estimated Vanessa’s future medical expenses to be approximately $1.7 million and
$5.3 million, respectively.  In its summary judgment response, Fortis included
a written objection, but it did not specifically object to the affidavit
testimony on the amount of Vanessa’s past medical expenses, nor did it object
on hearsay grounds to the life care plans attached to the attorney’s affidavit.[1]

Fortis filed an
affidavit of employee Cindy Drew on its contractual right to reimbursement and
the amount ($247,534.14) that it had paid on Vanessa’s $378,500 in medical
expenses.  The Drew affidavit stated that Fortis was not conceding that
Vanessa’s future medical care will be as high as the amount stated in her
attorney’s affidavit.  Drew’s affidavit also addressed its contingent
obligations to Vanessa’s future medical expenses:

it is my opinion that unless the Court holds
that Fortis is relieved of paying future benefits in this case, there is a
reasonable probability that Fortis will be obligated to process Vanessa Cantu’s
future medical benefits in accordance with the terms and conditions of her
policy, so long as she continues to be an eligible insured as that term in
defined under the policy, continues to pay the premiums on her policy, and
continues to renew her policy with Fortis.  As of this date, Vanessa Cantu’s
policy with Fortis is in full force and effect, and Fortis continues to process
her medical benefits in accordance with the terms and conditions of her policy
with Fortis. 

 

But Fortis did
not provide any evidence on the specific amount of Vanessa’s future medical
expenses and thus create a fact issue as to that amount.  Vanessa’s Fortis
policy has a lifetime maximum benefit amount of $2 million, and $247,534.14 of
that limit had been exhausted.

The trial court
thus had before it uncontroverted evidence that Vanessa’s past ($378,500) and
future (the $1.7 million and $5.3 million life care plans) medical expenses alone
exceeded either $2 million or $5.6 million, which Vanessa argued conclusively
established that the $1,445,000 settlement and the benefits paid by Fortis had
not made her whole.

          After a hearing, the trial
court granted Vanessa’s summary judgment motion but granted more relief than
was requested by ordering that Fortis “take nothing in its intervention in this
lawsuit.”  Sundance then filed an amended motion for judgment, arguing that any
claim by Fortis against Sundance is additionally barred by the pretrial
agreement that Fortis would look only to Vanessa to satisfy its subrogation
claims against the defendants.  The trial court granted Sundance’s amended
motion for judgment.  This appeal followed.  We will affirm.

          In its first issue, Fortis
complains that the “made-whole doctrine” does not apply to its contractual right
of reimbursement from Vanessa.  “An insurer is not entitled to subrogation if
the insured’s loss is in excess of the amounts recovered from the insurer and
the third party causing the loss.”  Ortiz v. Great So. Fire & Cas. Ins.
Co., 597 S.W.2d 342, 343 (Tex. 1980); see also Oss v. United Serv.’s
Auto Ass’n, 807 F.2d 457, 459-60 (5th Cir. 1987) (noting and citing Ortiz);
Texas Ass’n of School Boards, Inc. v. Ward, 18 S.W.3d 256, 261 (Tex.
App.—Waco 2000, pet. denied) (same); Esparza v. Scott & White Health
Plan, 909 S.W.2d 548, 551-52 (Tex. App.—Austin 1995, writ denied) (same).

While an insurance contract providing expressly for
subrogation may remove from the realm of equity the question of whether the insurer has a
right to subrogation, it cannot answer the question of when the insurer is actually entitled to subrogation or how much
it should receive.  See Duval
County Ranch Co. v. Alamo Lumber Co.,
663 S.W.2d 627, 637 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.); see also Shelter Ins. Co. v. Frohlich, 498 N.W.2d 74, 79 (Neb. 1993).  The principal
purpose of an insurance contract is to protect the insured from loss, thereby
placing the risk of loss on the insurer.  Ortiz, 597 S.W.2d at 344.  The insurer has
accepted payments from the insured to assume this risk of loss.  Therefore, if
“either the insurer or the insured must to some extent go unpaid, the loss
should be borne by the insurer for that is a risk the insured has paid it to assume.” 
Id. (quoting Garrity v. Rural Mut. Ins. Co.,
77 Wis.2d 537, 253 N.W.2d 512, 514 (1977)).  This basic principle cannot be
summarily overcome by a boiler-plate provision in an insurance contract that
purports to entitle the insurer to subrogation out of the first monies received
by the insured.  To find otherwise would be to defeat the fundamental
contractual expectations of the average insured.  Oss v. United
Servs. Auto. Ass'n, 807 F.2d 457, 460 (5th Cir. 1987).

 

Esparza, 909 S.W.2d at 551-52.

 

          Fortis’s contractual
subrogation and reimbursement rights are subject to the made-whole doctrine.  Ward,
18 S.W.3d at 259-61; Esparza, 909 S.W.2d at 551-52.  Moreover, the
subrogation and reimbursement clause is not an assignment, which the made-whole
doctrine might not apply to.  See Silverthorne v. Mosley, 929 S.W.2d
680, 681 (Tex. App.—Austin 1996, writ denied) (mere promise to pay debt from
designated fund does not create assignment); cf. Lexington Ins. Co. v. Gray,
775 S.W.2d 679 (Tex. App.—Austin 1989, writ denied) (distinguishing equity’s
application to assignment and to subrogation), disapproved on other grounds
by Amberboy v. Societe de Banque Privee, 831 S.W.2d 793 (Tex. 1992).  We
overrule issue one.

          In its third issue, Fortis
asserts that the summary judgment is error because Vanessa did not demonstrate
as a matter of law that she was not made whole.  In response to Vanessa’s
summary judgment motion, Fortis did not object to the life care plans as
hearsay or to Vanessa’s attorney’s affidavit testimony that her past medical
expenses were at least $378,500 and that her total past and future medical
expenses exceed $2 million, based on the life care plans.  Nor did Fortis file
any evidence specifically relating to the amount of Vanessa’s future medical
expenses to create a fact issue on whether Vanessa had been made whole by the
settlement and by Fortis’s payment of health care benefits on her behalf. 
Fortis filed summary judgment evidence only on its contractual right to
reimbursement, the amount that it had paid on Vanessa’s behalf, and its
contingent obligation to “process” future benefits.

          The life care plans
estimate Vanessa’s future medical expenses to be approximately $1.7 million and
$5.3 million, respectively.  Assuming that the life care plans and the
affidavit testimony on past medical expenses are hearsay, this evidence was not
objected to by Fortis on this basis, and as such, it is admissible, competent,
and sufficient to support summary judgment.  See Tex. R. Evid. 802 (stating that hearsay not objected to has
probative value); Choctaw Properties, L.L.C. v. Aledo ISD, 127 S.W.3d
235, 241 (Tex. App.—Waco 2003, no pet.) (hearsay must be objected to and ruling
must be obtained to preserve a complaint for appeal); Columbia Rio Grande
Reg’l Hosp. v. Stover, 17 S.W.3d 387, 396 (Tex. App.—Corpus Christi 2000,
no pet.) (hearsay not specifically objected to was competent to support summary
judgment motion); In re J.A.M., 945 S.W.2d 320, 322 (Tex. App.—San
Antonio 1997, no writ) (inadmissible hearsay in summary judgment affidavit has
probative value if not objected to).

          We hold that Vanessa’s
summary judgment evidence that her past and future medical expenses exceed $2
million is competent and sufficient to establish as a matter of law that she
was not made whole by the $1,445,000 received in settlement and the $247,534.14
in health insurance benefits paid by Fortis.  And if we assume that Fortis will
process and pay Vanessa’s future medical care, her Fortis policy has a lifetime
maximum benefit of $2 million, of which $247,534.14 has been exhausted.  Under the
life care plan with a future medical expense estimate of approximately $5.3
million, even with the complete exhaustion of Vanessa’s $2.0 million lifetime maximum
benefit under her Fortis policy, the summary judgment evidence established that
she would not be made whole by the $1,445,000 received in settlement and the $2
million in health insurance benefits paid by Fortis.

          We also hold that, under
these facts, Vanessa was not required to allocate the settlement amount to her
various damages because her insured interest alone—her medical expenses—exceeds
the settlement and health insurance benefits under the respective life care
plans.[2] 
In conclusion, Vanessa established that under both life care plans, her insured
interest—medical expenses—sustained an injury in excess of the total
compensation (settlement plus health insurance benefits) that she had received
or might receive.  We overrule issue three.

          In its second issue,
Fortis complains that the trial court erred in granting summary judgment by
ignoring other alleged equitable issues (e.g., settling without the
consent of Fortis) relating to Fortis’s subrogation rights.  But based on the
evidence and circumstances in this case, we do not find any inequitable conduct
on Vanessa’s part that would constitute grounds for finding that she was “made
whole” by the settlement or that she should otherwise share any of the
settlement proceeds with Fortis.  Cf.  Esparza, 909 S.W.2d at 552
(affirming trial court’s award of one-half of health insurance benefits paid on
behalf of plaintiff where plaintiff settled with defendant for less than policy
limits, released defendant, and nonsuited claim for past medical expenses).  We
overrule issue two.

          In its fourth issue,
Fortis complains about the trial court’s granting of Sundance’s amended motion
for partial judgment on the ground that the trial court had already granted
Vanessa’s summary judgment motion and had completely disposed of all of Fortis’s
claims.  In granting Vanessa’s motion for summary judgment and by ordering that
Fortis “take nothing in its intervention in this lawsuit,” the trial court
granted excess relief as to the defendants, including Sundance.  However, the
trial court corrected its error during its plenary power period, apparently
finding that Fortis’s pretrial agreement precluded a recovery from the
defendants.  Furthermore, Fortis was required to bring an issue on appeal
concerning the summary judgment order’s excess relief.  Beathard Joint
Venture v. West Houston Airport Corp., 72 S.W.3d 426, 436 (Tex. App.—Texarkana 2002, no pet.) (holding that appellant must raise as an issue on appeal
that excess relief was improperly granted in summary judgment order); Toonen
v. United Serv’s. Auto. Ass’n, 935 S.W.2d 937, 942 (Tex. App.—San Antonio
1996, no writ) (same).  By not complaining of or briefing the summary judgment
order’s excess relief, Fortis has waived any complaint, and the order cannot be
reversed.  San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 209-20 (Tex. 1990); SMI/USA, Inc. v. Profile Technologies, Inc., 38 S.W.3d 205, 208 n.3
(Tex. App.—Waco 2001, no pet.).

          Having so found, we need
not consider the remainder of Fortis’s issues involving whether it had released
its claims against the defendants.

          The trial court’s judgment
is affirmed.

 

 

                                                                              BILL VANCE

                                                                             Justice

 

Before
Chief Justice Gray

          Justice
Vance, and

          Justice
Reyna

          (Chief
Justice Gray dissents with a note:  Chief Justice Gray notes that the Court’s
opinion and judgment dated May 25, 2005 are being withdrawn in a separate order
and replaced with this opinion and a judgment of this same date.)

Affirmed

Opinion
delivered and filed July 13, 2005

[CV06]









   
[1]       Fortis’s
objections were that the attorney’s affidavit did not lay a foundation to
demonstrate his qualifications as an expert to give opinion testimony and that
it did not “present clear, undisputed evidence, in that he does not address the
issue of whether his client will have to pay for her future medical care.”  In
an order, the trial court overruled these objections.





   
[2]       Plainly,
had Vanessa allocated the $1,445,000 settlement among her recoverable damage
elements, Fortis’s position would only have worsened, especially with the
severity and permanence of her injuries, and the fact that the settlement and
the health insurance did not make her whole would have been much more obvious.